[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 85.]

FULMER, APPELLANT, *v.* INSURA PROPERTY & CASUALTY COMPANY, D.B.A. THE SHELBY INSURANCE GROUP, APPELLEE.

[Cite as *Fulmer v. Insura Prop. & Cas. Co.*, 2002-Ohio-64]

*Insurance—Underinsured motorist coverage—Insured gives underinsurance carrier notice of a tentative settlement prior to release—Release will not preclude recovery of underinsurance benefits, when—Insured satisfies exhaustion requirement in underinsured motorist provision in insurance policy, when.*

(No. 00-1788—Submitted October 3, 2001—Decided January 16, 2002.)

APPEAL from the Court of Appeals for Seneca County, No. 13-99-65.

_____

SYLLABUS OF THE COURT

1. When an insured has given her underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying its insured the amount of the settlement offer but does not do so, the release will not preclude recovery of underinsurance benefits. (*McDonald v. Republic-Franklin Ins. Co.* [1989], 45 Ohio St.3d 27, 543 N.E.2d 456, paragraph two of the syllabus, extended and followed; *Bogan v. Progressive Cas. Ins. Co.* [1988], 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph five of the syllabus, overruled.)

2. An insured satisfies the exhaustion requirement in the underinsured motorist provision of her insurance policy when she receives from the underinsured tortfeasor's insurance carrier a commitment to pay *any* amount in settlement with the injured party retaining the right to proceed against her underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's available policy limits. (*Bogan v. Progressive Cas. Ins. Co.*

[1988], 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph two of the syllabus, clarified and followed.)

_____

**DOUGLAS, J.**

{¶ 1} Plaintiff-appellant, Catherine Fulmer, was injured when her automobile was struck by an automobile driven by Albert Kulics. Kulics's negligence caused the collision. At the time of the accident, Kulics, the tortfeasor, was insured under a policy of automobile insurance with liability coverage limits of $50,000 per person. Fulmer was insured under a policy of automobile insurance issued by defendant-appellee, Insura Property & Casualty Insurance Company, that provided underinsured motorist coverage with a limit of $100,000 per person.

{¶ 2} As is generally true of insurance contracts that provide underinsured motorist coverage, Fulmer's contract with Insura contained an exhaustion clause and a subrogation clause. These clauses set forth prerequisites that Fulmer was required to meet before she could settle with the tortfeasor if Fulmer intended to pursue an underinsured motorist claim against Insura. Specifically, the exhaustion clause prohibited Fulmer from settling with a tortfeasor for less than the tortfeasor's coverage limits unless, of course, Insura consented.[1] The subrogation clause required Fulmer to protect Insura's subrogation rights against the tortfeasor, *i.e.*, it precluded Fulmer from executing a release of the tortfeasor without Insura's

_____

1. The Insura policy's exhaustion clause provided:

"We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured [or underinsured] motor vehicle because of bodily injury caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured [or underinsured] motor vehicle.

"We will pay under this coverage only if 1. or 2. below applies:

"1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

"2. A tentative settlement has been made between an insured and the insurer of [the underinsured] vehicle * * * and we:

"a. Have been given prompt written notice of such settlement; and

"b. Advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification." (Boldface omitted.)

consent.[2] According to the policy, Fulmer would forfeit her claim to underinsured motorist benefits if she failed to satisfy these provisions.

{¶ 3} After negotiations with Fulmer's attorney, the tortfeasor's insurer offered $37,500 to settle Fulmer's claim against the tortfeasor. Although Fulmer believed that her damages exceeded the tortfeasor's policy limit of $50,000, she decided, for various reasons, to accept the offer and forgo the additional $12,500 available under the tortfeasor's insurance policy. As is generally required in settlement agreements, Fulmer's acceptance of the settlement offer required her to execute a release of all claims against the tortfeasor.

{¶ 4} Because Fulmer intended to pursue underinsured motorist benefits from Insura for her damages in excess of the tortfeasor's $50,000 liability limit, she advised Insura of the settlement offer and requested Insura's consent. In the alternative, Fulmer requested that Insura pay her $37,500, the amount of the settlement offer, so that Insura could preserve its subrogation rights against the tortfeasor.

{¶ 5} Insura refused to consent to the settlement, asserting that the amount offered did not exhaust the tortfeasor's insurance limit. Insura also refused to pay Fulmer $37,500 to retain its subrogation rights against the tortfeasor because, it contended, Fulmer's damages were less than the tortfeasor's policy limit.

{¶ 6} Thereafter, Fulmer, without Insura's consent, settled the matter with the tortfeasor's insurer for $37,500. Fulmer informed Insura of the settlement and requested arbitration to determine whether she was entitled to underinsured

---

2. The Insura policy's subrogation clause provided:

"If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

"1. Whatever is necessary to enable us to exercise our rights; and

"2. Nothing after loss to prejudice them."

motorist benefits, *i.e.*, to determine whether she could prove that her damages exceeded the tortfeasor's available insurance limit of $50,000.

{¶ 7} Insura rejected Fulmer's demand for arbitration, asserting that Fulmer had violated the exhaustion and subrogation clauses of her policy and thereby forfeited her rights to underinsured motorist benefits. Fulmer consequently filed a complaint against Insura, seeking a declaratory judgment that she was entitled to underinsured motorist benefits.

{¶ 8} Insura moved for summary judgment and Fulmer filed a response in opposition. To support their respective positions with regard to the exhaustion issue, both parties relied on conflicting courts of appeals' interpretations of this court's holding in *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447. Insura relied on the Third District Court of Appeals' interpretation of *Bogan* set forth in *Stahl v. State Farm Mut. Auto. Ins. Co*. (1992), 82 Ohio App.3d 599, 612 N.E.2d 1260, to support its position that an insured satisfies an exhaustion clause only if she is able to show that the difference between the tortfeasor's policy limit and the settlement amount was approximately equal to the amount saved in litigation expenses. Applying that interpretation to this case, Insura argued that Fulmer could not show that the $12,500 difference represented the amount she saved by avoiding a trial against the tortfeasor and, thus, Fulmer violated the exhaustion clause of her insurance policy.

{¶ 9} In contrast, Fulmer relied on the Twelfth District Court of Appeals' interpretation of *Bogan* in *Combs v. Nationwide Mut. Ins. Co.* (1997), 119 Ohio App.3d 137, 694 N.E.2d 555, to support her contention that an insured satisfies the exhaustion clause of her underinsured motorist contract when she accepts *any* amount in settlement from the tortfeasor but is then limited to recovering only those damages in excess of the tortfeasor's available policy limits. Therefore, Fulmer argued, she satisfied the exhaustion clause and is entitled to underinsured motorist

benefits to the extent that her damages exceed the $50,000 limit of the tortfeasor's insurance policy.

{¶ 10} Insura's motion for summary judgment included the additional argument that Fulmer was precluded from recovering underinsured motorist benefits because she violated the subrogation clause of her insurance contract. In this respect, Insura argued that its decision to withhold consent to the settlement was reasonable and, therefore, pursuant to *Bogan*, Fulmer's subsequent release of the tortfeasor violated the subrogation provision of her insurance contract.

{¶ 11} In response, Fulmer asserted that the court's holding in *McDonald v. Republic-Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, controlled the subrogation issue. In *McDonald*, we held that an insured's release of a tortfeasor will not preclude recovery of underinsurance benefits if, prior to the release, she gave her underinsurance carrier notice of the tentative settlement and the underinsurer had a reasonable opportunity to protect its subrogation rights by paying the amount of the offer. *Id.* at paragraph two of the syllabus. Because Fulmer's actions met these requirements, she argued, she satisfied her obligation to protect Insura's subrogation rights. Fulmer did not introduce evidence to show that by settling with the tortfeasor she saved litigation expenses of approximately $12,500.

{¶ 12} The trial court reluctantly granted Insura's motion for summary judgment on the exhaustion issue, noting that it found the *Combs* decision to be well reasoned but that it was obligated to follow the earlier pronouncement of the Third District Court of Appeals in *Stahl*. Fulmer appealed the trial court's order to the Seneca County Court of Appeals.

{¶ 13} The court of appeals affirmed the trial court's judgment on the exhaustion issue and further held that summary judgment in favor of Insura was proper on the additional grounds that Fulmer had violated the terms of the subrogation clause. With regard to the subrogation issue, the court of appeals found

that the facts of this case more closely resembled the facts of *Bogan* than *McDonald* and, therefore, the court of appeals applied the ruling in *Bogan*.

{¶ 14} The cause is now before this court upon the allowance of a discretionary appeal.

{¶ 15} This case presents two issues for our determination. One is whether an injured insured satisfies an exhaustion requirement in her underinsured motorist contract when she accepts *any* amount from the tortfeasor and then pursues underinsurance benefits for only those damages in excess of the tortfeasor's available policy limits. The second issue is whether an insurer is permitted to deny underinsured motorist benefits to its insured based on a violation of a subrogation clause when, after notifying the insurer of the settlement offer and providing the insurer the opportunity to protect its subrogation rights by paying the amount of the settlement offer, its insured settled with and released the tortfeasor. Although these issues have been previously determined by this court in *Bogan* and *McDonald*, *supra*, we are called upon today to clarify the court's decision in *Bogan* and to determine whether our holding in *McDonald* is applicable to this matter.

{¶ 16} The facts in *Bogan* are virtually identical to the facts of the case now before us. In *Bogan*, Michael Bogan was injured in an automobile accident, and the tortfeasor's liability insurer offered to settle the Bogans' claim against the tortfeasor for $21,000, $4,000 less than the tortfeasor's policy limit. The Bogans notified their own insurer, Progressive Casualty Insurance Company, of the settlement offer and of their intention to seek underinsured motorist benefits through their policy with Progressive. Progressive responded by letter indicating that (1) in Progressive's view, $21,000 adequately compensated all of the Bogans' damages, (2) the Bogans must exhaust the limits of the tortfeasor's policy before making an underinsured motorist claim, and (3) acceptance of the settlement offer and a general release of the tortfeasor by the Bogans would destroy Progressive's

subrogation rights, thereby rendering the underinsured motorist provision unenforceable.

{¶ 17} Despite Progressive's refusal to consent, the Bogans accepted the settlement offer and executed a general release of the tortfeasor. Thereafter, Progressive refused to pay underinsured motorist benefits to the Bogans for their damages in excess of the tortfeasor's policy limit, contending that the Bogans had forfeited coverage by failing to meet their contractual obligations to exhaust the tortfeasor's policy limits and to protect Progressive's subrogation rights.

{¶ 18} The majority of this court rejected Progressive's failure-to-exhaust argument and held that "[a]n injured insured satisfies the 'exhaustion' requirement in the underinsured motorist provision of his insurance policy when he receives from the underinsured tortfeasor's insurance carrier a commitment to pay an amount in settlement with the injured party retaining the right to proceed against his underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's policy limits." *Bogan*, 36 Ohio St.3d 22, 521 N.E.2d 447, at paragraph two of the syllabus.

{¶ 19} On the other hand, the majority accepted Progressive's argument regarding the subrogation clause. The corresponding syllabus law read: "An insurer providing underinsured motorist coverage is not required to give its consent to a proposed settlement, the terms of which would destroy its right of subrogation provided within the underinsured motorist insurance policy." *Id.* at paragraph five of the syllabus. Accordingly, the court found that, by executing a release of the tortfeasor without Progressive's consent, the Bogans materially breached the insurance contract, thereby discharging Progressive from its obligation to provide underinsured motorist coverage. *Bogan* at 31, 521 N.E.2d at 456.

{¶ 20} In summary, paragraph two of the syllabus in *Bogan* offered insureds freedom to accept settlement offers for less than a tortfeasor's insurance limits without the underinsurer's consent without losing their claim to underinsured

motorist benefits. But because most settlement offers are contingent upon the injured party's releasing the tortfeasor, paragraph five of the syllabus, in effect, removed that freedom by preventing the insured from releasing the tortfeasor without the underinsurer's consent.

{¶ 21} Less than two years after *Bogan*, this court was again presented with a case in which an insured settled with and released the tortfeasor without the underinsurer's consent and was consequently denied underinsured motorist benefits for violating the terms of a subrogation clause. In *McDonald v. Republic-Franklin Ins. Co.*, 45 Ohio St.3d 27, 543 N.E.2d 456, the tortfeasor's insurer offered the injured party, Kendra McDonald, the full limit of the tortfeasor's liability policy. McDonald notified her underinsurer, Republic-Franklin Insurance Company ("RFI"), of the settlement offer and requested either consent to settle or a payment equal to the settlement offer to preserve RFI's right of subrogation against the tortfeasor. *Id.* at 33, 543 N.E.2d at 462 (Douglas, J., concurring). Despite extensive communication between RFI and McDonald's stepfather, RFI never responded to the notice of the offer, and McDonald ultimately settled with the tortfeasor's insurer and released the tortfeasor without RFI's consent. RFI then denied McDonald's underinsured motorist claim, asserting that she had forfeited her underinsured benefits by releasing the tortfeasor without RFI's consent. McDonald sued. The trial court dismissed the complaint, and the court of appeals, relying on paragraph five of the syllabus in *Bogan*, affirmed.

{¶ 22} In reversing the court of appeals' judgment, this court recognized and attempted to eliminate the unfair consequences resulting from *Bogan*'s syllabus paragraph five by modifying the law set forth therein. In *McDonald*, we held that "[w]hen an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before the release but does not do so, the release will not preclude recovery of

underinsurance benefits." *Id.*, 45 Ohio St.3d 27, 543 N.E.2d 456, paragraph two of the syllabus. The majority stopped short of overruling paragraph five of the syllabus in *Bogan* and instead classified that syllabus language as too broad and distinguished *Bogan* from *McDonald* on its facts. *Id.* at 29-31, 543 N.E.2d at 458-460. Today we review that aspect of the *McDonald* court's decision.

{¶ 23} Comparing the facts of *Bogan* to the facts of *McDonald*, we find the differences insufficient to justify distinguishing the two cases. The *McDonald* majority suggested that the length of time between the insured's notice to her insurer of the settlement offer and her acceptance of the offer was a material difference between the two cases. *Id.* at 32, 543 N.E.2d at 461. We disagree.

{¶ 24} In *McDonald*, the insured notified RFI of the tortfeasor's settlement offer in May 1985, and then did not accept the offer until December of that same year. Whereas, the *McDonald* majority noted, the Bogans settled with the tortfeasor "just two days after" receiving direction from their own insurer, Progressive, not to do so. The *McDonald* majority determined that by accepting the offer so quickly the Bogans had deprived Progressive of the opportunity to consider the settlement offer.

{¶ 25} A close examination of the facts in *Bogan*, however, reveals that the Bogans notified Progressive in writing of the settlement offer and the Bogans' intent to accept it. *Bogan*, 36 Ohio St.3d at 23, 521 N.E.2d at 449. The letter requested that Progressive either consent to the settlement *or tender its own check for the settlement amount to protect its subrogation rights*. *Id.* In response, Progressive did not give its consent and admonished the Bogans to notify Progressive if the tortfeasor's insurer offered the full policy limit, suggesting that only then would it consider whether to tender a payment to protect its subrogation rights. *Id.* at 24, 521 N.E.2d at 450. Thus, contrary to the *McDonald* majority's suggestion, Progressive did not indicate that it wanted more time to consider whether to pay the amount of the settlement offer in order to protect its subrogation

rights. In fact, we find that the Bogans could have reasonably construed Progressive's response as a rejection of the Bogans' request for Progressive to pay them the amount of the settlement offer, thereby justifying the Bogans' immediate acceptance of the tortfeasor's settlement offer. Therefore, we find that this factual difference does not support distinguishing the cases.

{¶ 26} Another difference between the two cases is the amount of the settlement offer. In *McDonald*, the tortfeasor's insurer offered the tortfeasor's full policy limit in settlement, whereas in *Bogan* the offer was less than the tortfeasor's full policy limit. This difference is not significant, however, because the *Bogan* court determined that the settlement amount satisfied the exhaustion clause. Moreover, in both cases the underinsurer would have been obligated to pay the insured's damages only to the extent they exceeded the tortfeasor's policy limit.

{¶ 27} A third difference between the two cases is that, in *Bogan*, the underinsurer expressly denied its insured's request for consent to settle while in *McDonald* the underinsurer simply did not respond to the insured's request for its consent. This distinction is also insufficient to justify a different result because the manner in which consent is withheld is irrelevant. Furthermore, in *McDonald*, the court's holding specifically addressed the situation when an underinsurer fails to respond to an insured's notification of a settlement offer: "The insurer's failure to respond, within a reasonable time, to notification by its insured of a settlement offer will operate to void a subrogation clause in the insurer's underinsured motorist provision." *Id.* at paragraph three of the syllabus. If the underinsurer's failure to respond were the reason for the court's holding in paragraph two of the syllabus, then the court would not have created a separate syllabus to address that situation.

{¶ 28} Insura argues that the *McDonald* majority was correct in distinguishing *Bogan* because it would be unfair for the holding in *McDonald* to be applied in cases such as *Bogan*. In this regard, Insura contends that if applied in such cases the underinsurer will be forced to pay the amount of a settlement offer

to retain its subrogation rights even when it believes that the insured's damages are less than the tortfeasor's limits.  We find no merit to this argument because if the underinsurer is correct then, by definition, the tortfeasor is not an underinsured motorist.  Consequently, the underinsurer will not be obligated to pay underinsured motorist benefits and, therefore, will not have any subrogation rights to protect.

**{¶ 29}** Because we find no significant distinction between the facts of *Bogan* and *McDonald* and no merit to Insura's argument that applying the *McDonald* holding to cases like *Bogan* would be unjust, we overrule *McDonald* to the extent that it distinguishes *Bogan* and thereby extend our holding in *McDonald*.  Accordingly, we hold that when an insured has given her underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying its insured the amount of the settlement offer but does not do so, the release will not preclude recovery of underinsurance benefits.  Paragraph five of the syllabus of *Bogan* is therefore overruled.

**{¶ 30}** Applying this holding to the facts of the case at bar, we find that Fulmer's actions did not violate the subrogation clause.  Fulmer gave Insura notice of the settlement offer and provided an opportunity for Insura to pay her the offered amount.  Insura refused to pay Fulmer the amount offered and, therefore, Fulmer's release of the tortfeasor did not preclude her from recovering underinsured motorist benefits.[3]

---

3. We note that the Ohio Association of Civil Trial Attorneys, which filed an *amicus* brief in this case in support of Insura, contends that this court should decline to consider the issue of whether Fulmer violated the subrogation clause.  In this regard, the *amicus* asserts that the parties "neither pursued nor briefed this issue in the court below."  This is simply not true.  Insura first raised the subrogation issue as an alternate reason for denying Fulmer underinsured motorist benefits in its motion for summary judgment.  Fulmer and Insura then included opposing arguments on the issue in their court of appeals' briefs and in their briefs before this court.

In addition, although the trial court did not base its ruling on the subrogation clause, the court of appeals held that failure to satisfy the subrogation clause was an additional reason for upholding the trial court's ruling.  Moreover, if we do not address subrogation, it will remain an

**{¶ 31}** We now turn our attention to Insura's contention that Fulmer violated the exhaustion clause of her insurance contract and is, therefore, precluded from recovering underinsured motorist benefits. The court of appeals held that summary judgment was properly granted in favor of Insura on this issue because Fulmer failed to offer evidence to establish that the difference between the settlement amount ($37,500) and the tortfeasor's policy limit ($50,000) represented a "genuine savings in litigation expenses." The court of appeals relied on this court's decision in *Bogan* in reaching its conclusion that the insured was required to make such a showing.

**{¶ 32}** Fulmer argues that the court of appeals incorrectly interpreted the holding in *Bogan*. Fulmer contends that, according to *Bogan*, an insured satisfies an exhaustion requirement in her underinsured motorist contract when she accepts *any* amount in settlement from the tortfeasor and retains her right to pursue underinsurance benefits for her damages in excess of the tortfeasor's available policy limit.

**{¶ 33}** We point out that the language in syllabus paragraph two of *Bogan* favors the interpretation advocated by Fulmer. Nevertheless, because several courts of appeals have interpreted *Bogan* in the manner suggested by Insura, we review the court's decision in *Bogan* for verification that the language in paragraph two of the syllabus accurately represents the court's intent.

**{¶ 34}** In its analysis, the *Bogan* court first explained that public policy favors settlement of disputes and acknowledged that there are various reasons why an insured would settle for less than the tortfeasor's policy limits. 36 Ohio St.3d at 25-26, 521 N.E.2d at 451. For example, the court pointed out, the unpaid amount *might* represent the amount the insured saved in litigation expenses by settling. The court then stated that *more important than saving litigation costs*, a settlement

_____

issue for Insura to argue on remand. Therefore, we believe that it is prudent to address the issue herein.

"hastens the payment to the injured party who obviously needs compensation soon after the injuries when the medical expenses begin to amass and when the anxiety level is probably quite high." *Id.* at 26, 521 N.E.2d at 451.

{¶ 35} We find that this language supports Fulmer's interpretation and undermines Insura's because it recognizes that there are several reasons an insured might settle for less than the tortfeasor's policy limit. A saving in litigation expenses is one reason the court mentioned but not the only one. In fact, the court specifically noted that receiving payment quickly was a benefit that was even more important to the insured than saving litigation expenses. *Id.* at 26, 521 N.E.2d at 451.

{¶ 36} The *Bogan* court then examined the insurer's rationale for including an exhaustion provision in its underinsured motorist policy. The court acknowledged that the word "exhaust" means " 'to use up the whole supply or store of: expend or consume entirely.' " *Id.* at 27, 521 N.E.2d at 453, quoting Webster's New Third International Dictionary (1986) 796. But the court refused to apply the term strictly, concluding that the objective of the exhaustion clause in an underinsured motorist insurance policy is "quite clearly to absolve the insurer from liability for those uncollected amounts which were below the stated limits of the underinsured tortfeasor's policy." *Id.* at 28, 521 N.E.2d at 453. That goal, the court determined, is met when the insured agrees to seek underinsured motorist coverage for only those damages in excess of the tortfeasor's policy limit. *Id.*

{¶ 37} This portion of the court's analysis also supports Fulmer's interpretation of *Bogan* by recognizing that, from the underinsurer's standpoint, the tortfeasor's policy limits are exhausted when the insured voluntarily decides to treat the proffered settlement as a receipt of the entire policy limit.

{¶ 38} The court went on to declare that it did not mean to suggest that an injured party may voluntarily abandon her claim against the tortfeasor and proceed directly against her underinsurer. *Id.* at 28, 521 N.E.2d at 453. Insura and many

courts of appeals rely on this sentence, combined with the court's mention that the difference between the settlement amount and the tortfeasor's policy limit may represent savings in litigation expenses, to conclude that an insured abandons her claim if she fails to show that the unpaid portion of the tortfeasor's policy was equivalent to her savings in litigation costs.

{¶ 39} On the contrary, we find that the court's use of the word "abandon" supports the interpretation urged by Fulmer. The word "abandon" means "[t]o relinquish or give up with intent of never again resuming one's right or interest. * * * To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert." Black's Law Dictionary (6 Ed.1990) 2. Clearly, if an insured accepts a payment *in any amount* from the tortfeasor she has not *abandoned* her claim against the tortfeasor.

{¶ 40} Moreover, the formula used by the court of appeals in determining whether the injured party abandoned her claim against the tortfeasor takes into account only one of the reasons given in *Bogan* for the injured party's decision to accept less than the tortfeasor's policy limits, *i.e.*, savings in litigation expenses. In this way, the court of appeals ignored the *Bogan* court's reference to other factors that go into that decision. In fact, the formula disregards one factor that the court specifically recognized as more important than saving litigation costs—the benefit of receiving payment quickly. Of course, the benefit an injured party receives by receiving payment quickly cannot be measured or proved, so it does not fit neatly into a formula.

{¶ 41} For the foregoing reasons, we reject the court of appeals' interpretation of *Bogan*, which takes the complex decision that an injured insured must make and boils it down to an equation that does not, and cannot, take into account all of the factors important in the decision. Fulmer's interpretation, on the other hand, accurately reflects the *Bogan* court's posture on the issue. That is, Fulmer's interpretation permits an injured insured to take into account all of the

14

factors important to her in determining how much she is willing to accept to settle her claim against the tortfeasor, and at the same time protects her underinsurer from paying more than it bargained for by giving it credit for the full amount of the tortfeasor's available policy limit.

{¶ 42} Insura and *amicus curiae*, Ohio Association of Civil Trial Attorneys, contend that the interpretation of *Bogan* urged by Fulmer would defeat the *Bogan* court's intention of avoiding unnecessary litigation. *Id.*, 36 Ohio St.3d at 25-26, 521 N.E.2d at 451. We find no merit in this argument. When an insured settles with a tortfeasor, a lawsuit is avoided and only one proceeding is then necessary to determine whether the insured is entitled to underinsured benefits, *i.e.*, to determine if damages exceed the tortfeasor's available policy limit. If the underinsurer pays the amount of the settlement offer in order to preserve its subrogation rights, there is, again, only one proceeding necessary—a trial against the tortfeasor. The damages proved in that trial will determine whether the tortfeasor is underinsured.

{¶ 43} Insura also argues that the interpretation urged by Fulmer is unfair to the underinsurer because, taken to its extreme, it would permit the insured to settle with the tortfeasor for $.01 and then pursue her underinsured motorist benefits. We find this argument to be without merit for three reasons. First, it is not likely that the insured would agree to settle for such a small amount because she forfeits the difference between the settlement amount and the tortfeasor's available limits. Second, if the insured does seek a settlement in that amount, the underinsurer can prevent the release of the tortfeasor by paying just $.01 to its insured, and thereby preserve its subrogation rights. And finally, even if the insured does settle for $.01, the underinsurer is not prejudiced because it still has to pay only the amount it contracted to pay, *i.e.*, the insured's damages in excess of the tortfeasor's available limits up to the insured's policy limit.

{¶ 44} In light of the foregoing, we reject the court of appeals' interpretation of *Bogan*. Pursuant to *Bogan*, an insured satisfies the exhaustion requirement in

the underinsured motorist provision of her insurance policy when she receives from the underinsured tortfeasor's insurance carrier a commitment to pay *any* amount in settlement with the injured party retaining the right to proceed against her underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's available policy limits. We thus clarify paragraph two of the syllabus in *Bogan*. Applying the holding in *Bogan* to the case before us, it is clear that Fulmer satisfied the exhaustion provision of her insurance contract with Insura.

{¶ 45} Having found that Fulmer satisfied her obligation to exhaust the tortfeasor's available insurance limits and her obligation to protect Insura's subrogation rights, we conclude that the court of appeals erred in affirming the trial court's ruling granting summary judgment in favor of Insura. Fulmer is entitled to underinsured motorist benefits as provided by her contract of insurance with Insura to the extent that her damages exceed the tortfeasor's available insurance limit of $50,000.[4] Accordingly, we reverse the court of appeals' judgment and remand the cause for proceedings consistent with this opinion.

*Judgment reversed*

*and cause remanded.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**COOK, J., dissenting.**

{¶ 46} Because today's decision compounds a prior error of law and reaches an issue that the court cannot address in this case, I respectfully dissent.

I

———————————

4. For example, if it is determined that Fulmer's damages are $50,000 or less, Insura owes Fulmer nothing. If Fulmer's damages are determined to be $70,000, Insura owes Fulmer $20,000. If damages are determined to be $200,000, Insura owes Fulmer $50,000.

{¶ 47} The UIM insurance policy at issue in this case provides for two events that would trigger Insura's payment of UIM benefits. First, Fulmer could pursue UIM benefits if she had exhausted the tortfeasor's liability limits by payment of judgments or settlements. Second, she could seek UIM benefits if she had sent Insura prompt written notice of a tentative settlement between Fulmer and the tortfeasor, and Insura had advanced payment equal to the settlement amount within thirty days of the notification. Because Insura did not tender payment, the only issue before this court is whether exhaustion occurred.

{¶ 48} In disposing of the exhaustion issue, the majority purports to follow a "clarified" *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447. This court stated in *Bogan* that "[t]he precise meaning of 'exhaust,' although not a legal term *per se*, would seem rather easily ascertained," and proceeded to quote a dictionary definition of the term (" 'to use up the whole supply or store of: expend or consume entirely' "). *Id*. at 27, 521 N.E.2d at 453, quoting Webster's Third New International Dictionary (1986) 796. Although the court then "accept[ed] the above definition as accurately describing the term at issue," the court nonetheless "disagree[d] with so strict an application" that would require that the entirety of the tortfeasor's policy be paid to the injured insured. *Id*. at 28, 521 N.E.2d at 453. Instead, the court reasoned that "[t]he exhaustion clause must be construed as it was intended, *i.e.*, a threshold requirement and not a barrier to underinsured motorist insurance coverage." *Id*. Thus, the *Bogan* court reached its "settlement plus credit" rule.

{¶ 49} But *Bogan* strays from fundamental contract interpretation principles. See *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102 (insurance contracts must be construed by the same rules as other written contracts). The problems with *Bogan* are threefold. First, its analysis fails to credit the contractual language that bars UIM coverage when the party seeking coverage fails to meet the policy's threshold requirement.

Second, the analysis disregards the plain meaning of "exhaust."  Both the *Bogan* exhaustion clause and the policy provision in the instant case require in relevant part that the limits of the tortfeasor's policy be "exhausted by payment of judgments or settlements."  Neither policy defines "exhausted." But the commonly accepted meaning of the term "exhaust" is "to consume entirely."  Webster's Third New International Dictionary (1986) 796.  *Bogan*, however, contrary to the text of the policy provision, rewrites the policy so that "exhausted" means to have consumed *less* than entirely.  Third, the analysis ignores the meaning of "payment."  The policy provisions require exhaustion by *payment*.  Contrary to the *Bogan* rationale, this does *not* encompass credit.  The Supreme Court of Wisconsin explains:

"[T]he exhaustion clause specifies that only one manner of exhaustion will trigger the obligation to pay UIM benefits: exhaustion 'by payment of judgements [*sic*] or settlements.'  * * *

"[A] 'settlement plus credit' does not constitute 'payment' of liability limits as that term is commonly and ordinarily understood.  It is true that a settlement of this nature bars further claim against the tortfeasor's insurer and protects the UIM carrier against liability of the difference between the settlement amount and the tortfeasor's full policy limits.  But it plainly does not exhaust the tortfeasor's policy limits *by payment* of those limits, as required by the UIM policy.

"A 'payment' is '**1.** something that is paid; an amount paid; compensation; recompense.  **2.** the act of paying * * *.'  Random House Unabridged Dictionary 1424 (2d ed.1993).  The court of appeals concluded that, in the context of this UIM exhaustion clause, the term 'payment' is susceptible of only one reasonable meaning: 'compensation paid by the liability insurer and received by the insured.' [Citation omitted.]  We agree." (Emphasis and boldface *sic*.)  *Danbeck v. Am. Family Mut. Ins. Co.* (2001), 245 Wis.2d 186, 195-196, 629 N.W.2d 150, 155.

{¶ 50} Thus, giving the clear and unambiguous terms of the exhaustion clause their natural and commonly accepted meanings, I conclude that the policy

18

requires that the tortfeasor's policy be *consumed entirely*, by *payment* of either judgments or settlements. The exhaustion clause does not provide for crediting. Absent complete depletion via payment of the tortfeasor's policy amount, the injured insured fails to satisfy the threshold requirement to pursuing UIM coverage.

**{¶ 51}** The majority errs by adhering to—and extending—*Bogan*'s rewriting of policy language. There is no basis for concluding that "public policy" warrants such judicial revision of the meaning of the policy language. The statutory scheme, for example, does not directly address exhaustion clauses. To the contrary, R.C. 3937.18(A)(2) provides only for a setoff of the amounts actually paid to the injured insured from the tortfeasor's policy. *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 437-439, 746 N.E.2d 1077, 1090-1091 (Cook, J., dissenting) (explaining that the *Littrell* majority reached this correct conclusion, albeit using erroneous reasoning, despite the fact that the case did not actually present the issue).

**{¶ 52}** I conclude that the exhaustion clause in this case requires the complete depletion of the tortfeasor's policy, by payment, before the insured can pursue UIM recovery. I would therefore overrule *Bogan*'s second syllabus paragraph and reason that, because Fulmer failed to satisfy the exhaustion clause of her policy, the trial court properly entered summary judgment for Insura. In reaching this conclusion, I am mindful that the issue before this court is not the validity of exhaustion clauses, but solely the meaning of such clauses. I therefore express no opinion on whether such exhaustion clauses are void as against public policy. See *Taylor v. Govt. Employees Ins. Co.* (1999), 90 Hawaii 302, 312-313, 978 P.2d 740, 750-751.

II

**{¶ 53}** Today's majority also errs in deciding the subrogation issue and carrying that decision over to the first syllabus paragraph. The majority states in footnote 3 that "although the trial court did not base its ruling on the subrogation clause, the court of appeals held that failure to satisfy the subrogation clause was

an additional reason for upholding the trial court's ruling. Moreover, if we do not address subrogation, it will remain an issue for Insura to argue on remand. Therefore, we believe that it is prudent to address the issue herein." This rationale rejects the court's inherently reactive role of settling the law as it comes to us on appeal, in favor of proactively addressing issues that the trial court did not develop. Further, this reasoning bootstraps the majority's overreaching by relying in part on an error by the court of appeals' majority.

{¶ 54} In its judgment entry, the trial court stated that this case specifically "asked [the court] to find whether the gap of $12,500.00 constitutes an exhaustion of the policy for legal or practical purposes." That court also characterized the issue more generally: "[T]he issue for this Court to decide is whether or not a settlement by the Plaintiff with the tortfeasor constitutes exhaustion as a pre-condition to the receipt of underinsured motorist coverage." The trial court proceeded to grant summary judgment on the basis of a lack of exhaustion. Nowhere in the trial court's judgment entry does that court analyze—or even *mention*—the policy's subrogation clause. Consequently, the appeals court majority's discussion of subrogation is mere dictum.

{¶ 55} As today's majority implies, it would be more convenient to address the subrogation issue at this juncture. But convenience is not a substitute for following the law. Cf. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141 ("[Civ.R. 56(C)] mandates that the trial court make the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an 'independent' review of an appellate court"). Judicial economy does not confer *carte blanche* upon an appellate court to resolve potential issues that a trial court did not decide. Because even the most measured sense of judicial restraint confines this court to passing upon only those issues developed below, the majority's creation of syllabus law on subrogation lacks legitimacy.

{¶ 56} I would affirm the judgment of the court of appeals.

20

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

————————————

*Lackey, Nusbaum, Harris, Reny & Torzewski, L.P.A.*, and *Jay Harris*, for appellant.

*John S. Wasung* and *Susan Healy Zitterman*, for appellee.

*McCarthy, Palmer, Volkema & Thomas* and *Michael S. Miller*; *Law Firm of Frank Todaro and Robert J. Wagoner*, urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers.

*Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P.*, and *James R. Gallagher*, urging affirmance for *amicus curiae* Ohio Association of Civil Trial Attorneys.

————————————