OPINION
{¶ 1} Defendant Grange Mutual Casualty Company appeals a summary judgment of the Court of Common Pleas of Stark County, Ohio, entered in favor of plaintiff Gregory T. Ross, Jr. Grange assigns two errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE GREGORY T. ROSS, JR.
 {¶ 3} "II. THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO APPELLANT GRANGE MUTUAL CASUALTY COMPANY."
 {¶ 4} In its judgment entry of February 7, 2002, the trial court found the facts were undisputed. On May 3, 1999, Ross was operating his motorcycle when he was involved in an accident with an underinsured motorist, Mary L. Keener. The tortfeasor was insured by State Farm, which paid the $100,000 policy limit to Ross on June 28, 2000. In exchange for the policy limits, Ross signed a release in favor of the tortfeasor and State Farm.
 {¶ 5} Ross was employed by Shaw Body, Inc., at the time of the accident. Shaw was insured by Grange pursuant to a commercial package. Ross claimed coverage pursuant to the Supreme Court's recent holding inScott-Pontzer v. Liberty Mutual Insurance Company (1999),85 Ohio St.3d 660. The trial court found the commercial policy contains a UM/UIM endorsement defining the term "insured" in virtually the same manner as the endorsement in the Scott-Pontzer case. The court concluded Ross was entitled to coverage under the commercial policy.
 {¶ 6} The trial court rejected the two arguments raised by Grange. First, Grange argued the commercial policy contained an "other-owned vehicle" exclusion, under which it claimed Ross was not entitled to benefits. Grange also submitted Ross had destroyed its contractual, equitable, and statutory subrogation rights when he settled with the tortfeasor. The trial court rejected both these arguments reasoning there was coverage by operation of law.
 I and II {¶ 7} Because the assignments of error are complementary, that is, they assert summary judgment was inappropriate in favor of Ross and appropriate, instead, in favor of Grange, we will address them together.
 {¶ 8} Civ.R. 56(C) provides in pertinent part:
 {¶ 9} (C) Motion and proceedings
 {¶ 10} "The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
 {¶ 11} A trial court should not grant summary judgment if there is a genuine issue of any material fact to be litigated, nor if, construing the evidence in favor of the non-moving party, reasonable minds could come but to one conclusion on the undisputed facts, see, e.g. OrmetPrimary Aluminum Corp. v. Employers Insurance of Wassau (1999),88 Ohio St.3d 292 at 300.
 {¶ 12} The record indicates Ross never notified Grange of the potential UM/UIM claim until he contacted Grange in April, 2001, requesting a copy of any policy in effect on May 3, 1999, the date of the accident. Grange argues this notice came nearly two years after the accident, ten months after Ross released the tortfeasor, and twenty-one months after the decision in Scott-Pontzer was announced. Often claimants argue they should not be bound to notify a Scott-Pontzer insurer of settlement where the settlement occurred well in advance of theScott-Pontzer decision. Such claimants argue their only error was the inability to anticipate the change in Ohio law. This argument is not applicable here, since Scott-Pontzer was announced only a few months after the accident and well before Ross executed the releases. Grange argues this unilaterally destroyed its subrogation rights.
 {¶ 13} The contract of insurance Grange issued requires a claimant to do everything necessary to secure its rights and must do nothing after the accident or loss to impair the rights. The UM/UIM endorsement also requires a person seeking uninsured motorist coverage to notify Grange in writing of a tentative settlement and allow Grange thirty days to advance payment to the insured in an amount equal to the tentative settlement, in order to preserve Grange's rights against the insurer, operator, or owner of the underinsured or uninsured motor vehicle.
 {¶ 14} Ross cites us to Hartford Casualty Insurance Company v.Easley (1991), 62 Ohio St.3d 232, wherein the Supreme Court reviewed an accident claim in which the plaintiff was injured while operating a borrowed car. After reaching a tentative settlement with the tortfeasor's insurer, she notified the car's owner of her potential claim under his underinsured motorist policy. After settling for the tortfeasor's policy limits and executing a release, she sought coverage from the insurer of the car she had been operating.
 {¶ 15} The Supreme Court found the claimant was the borrower of the policy owner's car, and was not able to provide an underinsured carrier with notification of a possible settlement. The insurer did not issue the policy to the claimant, but to the car's owner, and the court found this significant in that there was no contract between the claimant and the carrier to provide UIM benefits. Instead, the benefits arose not by contract, but from her use of the borrowed car. The Supreme Court found it was a difficult, if not impossible, task for the claimant to discover her friend's insurance company and the terms of the policy.
 {¶ 16} Ross asserts that his situation is similar to the claimant in Easley, in that he had no contractual relationship with Grange. He argues he had no reason to know the nature of his employer's insurance coverage, or even the identity of the insurer. Ross also argues Grange was not prejudiced by the delay in notice of the claim and settlement.
 {¶ 17} In the recent case of Fulmer v. Insura Property andCasualty Co., 94 Ohio St.3d 85, 2002-Ohio-64, 760 N.E.2d 392, the Supreme Court reaffirmed the notion that subrogation is still a viable force in Ohio insurance law. We find where, as here, the settlement with the tortfeasor comes nearly two years after the announcement of theScott-Pontzer decision, and where, unlike Easley, a claimant pursues aScott-Pontzer claim against the employer's insurance company, a delay such as the one here is unreasonable and unexcused.
 {¶ 18} In Ormet, supra, the Supreme Court found provisions in insurance contracts usually require immediate notice, prompt notice, or notices as soon as practical. Virtually all require notice within a reasonable time in light of the surrounding facts and circumstances, and a late notice relieves an insurer of its obligation to provide coverage. Here, we find Ross did not provide prompt notice of the impending settlement and did not give Grange the opportunity to protect its subrogation claims. Accordingly, we find Ross cannot recover against Grange.
 {¶ 19} This finding renders moot the issues regarding whether Ross would otherwise have been an insured under the policy.
 {¶ 20} The assignments of error are both sustained.
 {¶ 21} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed.
By Gwin, P.J., Wise, J., concurs separately.
Edwards, J., concurs separately.
Topic: insurance.