JOURNAL ENTRY and OPINION
{¶ 1} Defendants-appellants The Flood Company and its insurer Hartford Fire Insurance Company ("Hartford") appeal the trial court's denial of their motion for summary judgment and its grant of summary judgment in favor of plaintiffs-appellees Jeffrey and Katherine Straughan. The trial court held that Hartford owed coverage to the Straughans following a car accident involving Jeffrey. For reasons explained below, we reverse and remand.
 I. {¶ 2} Jeffrey Straughan, while driving his wife's truck, was struck by another driver ("the tortfeasor"). The tortfeasor's insurance company Guide One Insurance Company ("Guide One") reached a settlement with the Straughans, who received the tortfeasor's liability limit of $12,500 in exchange for the Straughans's release of all claims arising out of the accident. The Straughans did not provide notice to Hartford of their intention to settle with the tortfeasor. The Straughans then sought uninsured/underinsured ("UM/UIM") coverage from Hartford, which carried a Commercial Auto Policy on behalf of Katherine's employer The Flood Company.
 {¶ 3} The Straughans brought their UM/UIM claim against Hartford pursuant to Scott-Pontzer v. Liberty Mut. Ins. Co. (1999),85 Ohio St.3d 660, and Ezawa v. The Yasuda Fire Marine Ins. Co. ofAmerica (June 30, 1998), Franklin App. No. 97APE10-1343, reversed (1999), 86 Ohio St.3d 557. Hartford does not argue that Scott-Pontzer is not applicable, but that the Straughans are precluded from coverage because (1) Hartford may assert any defense that the tortfeasor may, which here, is that the settlement and release relieves the tortfeasor from further liability; (2) the Straughans destroyed Hartford's subrogation rights by settling with Guide One; and (3) the Straughans breached the notice provision of the policy.
 {¶ 4} We consider the trial court's granting the Straughans's motion for summary judgment in their favor de novo. Our standard of review is whether, after construing the evidence most strongly in favor of Hartford, reasonable minds can come to but one conclusion and that conclusion is adverse to Hartford. Civ.R. 56(C).
 II. A. {¶ 5} Ultimately, Hartford argues that the Straughans destroyed its subrogation rights by breaching the notice provision of the insurance policy. The Straughans counter that the "notice" provision and the "consent" and "subrogation" provisions are confusing, intertwined and ambiguous and, therefore, unenforceable.
 B. {¶ 6} The relevant language from the Commercial Auto policy (CA 00 01 12 93) follows:
 {¶ 7} "Section IV — Business Auto Conditions
 {¶ 8} "The following conditions apply in addition to the Common Policy Conditions:
 {¶ 9} "* * *
 {¶ 10} "2. Duties in the Event of Accident, Claim, Suit or Loss
 {¶ 11} "a. In the event of `accident', claim, `suit' or `loss', you must give us or our authorized representative prompt notice of the `accident' or loss'. Include:
 {¶ 12} "(1) How, when and where the `accident' or `loss' occurred;
 {¶ 13} "(2) The `insured's' name and address; and
 {¶ 14} "(3) To the extent possible, the names and addresses of any injured persons and witnesses.
 {¶ 15} "b. Additionally, you and any other involved `insured' must:
 {¶ 16} "(1) Assume no obligation, make no payment or incur no expense without our consent, except at the `insured's' own cost.
 {¶ 17} "* * *
 {¶ 18} "3. Legal Action Against Us
 {¶ 19} "No one may bring a legal action against us under this Coverage Form until:
 {¶ 20} "a. There has been full cooperation with all the terms of this Coverage Form[.]
 {¶ 21} "* * *
 {¶ 22} "5. Transfer of Rights of Recovery Against Others to Us
 {¶ 23} "If any person [sic] organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after `accident' or `loss' [sic] impair them."
 {¶ 24} Further, a later endorsement (CA 21 33 03 98) to the policy, which became a part of the policy and which changes the policy where there are discrepancies, reads in relevant part:
 {¶ 25} "A. Coverage
 {¶ 26} "1. We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or operator of:
 {¶ 27} "a. An `uninsured motor vehicle' as defined in ParagraphsF.3.a., b. and c. because of `bodily injury':
 {¶ 28} "(1) Sustained by the `insured'; and
 {¶ 29} "(2) Caused by an `accident'.
 {¶ 30} "* * *
 {¶ 31} "The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the `uninsured motor vehicle'.
 {¶ 32} "2. We will pay under this coverage only if a. or b. below applies:
 {¶ 33} "a. The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or
 {¶ 34} "b. A tentative settlement has been made between an `insured' and the insurer of the vehicle described in paragraph b. of the definition of `uninsured motor vehicle' and we:
 {¶ 35} "(1) Have been given prompt written notice of such settlement; and
 {¶ 36} "(2) Advance payment to the `insured' in an amount equal to the tentative settlement within 30 days after receipt of notification.
 {¶ 37} "* * *
 {¶ 38} "C. Exclusions
 {¶ 39} "This insurance does not apply to:
 {¶ 40} "1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle'.
 {¶ 41} "* * *
 {¶ 42} "E. Changes In Conditions
 {¶ 43} "* * *
 {¶ 44} "2. Duties In The Event Of Accident, Claim, Suit Or Loss is changed by adding the following:
 {¶ 45} "* * *
 {¶ 46} "c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle'.
 {¶ 47} "F. Additional Definitions
 {¶ 48} "As used in this endorsement:
 {¶ 49} "* * *
 {¶ 50} "3. `Uninsured motor vehicle' means a land motor vehicle or trailer:
 {¶ 51} "a. For which no liability bond or policy at the time of an `accident' provides at least the amounts required by the applicable law where a covered `auto' is principally garaged;
 {¶ 52} "b. Which is an underinsured motor vehicle. An `underinsured motor vehicle' means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an `accident' provides at least the amounts required by the applicable law where a covered `auto' is principally garaged but their limits are less than the Limit of insurance of this coverage.
 {¶ 53} "c. For which an insuring bond or bonding company denies coverage or is or becomes insolvent[.]"
 C. {¶ 54} The crux of the coverage dispute here is whether the Straughans's failure to notify Hartford of any settlement precludes them from UM/UIM coverage. The Straughans argue that the requirement to notify Hartford of a tentative settlement and the exclusion's inapplicability to settlements made without Hartford's consent are ambiguous and therefore unenforceable.
 {¶ 55} We, however, find no ambiguity. The language in the policy under review is identical to that recently reviewed by the Second Appellate District. The Cincinnati Ins. Co. v. Estate of George McClain
(Mar. 8, 2002), Greene Appellate No. 2002-CA-96. We agree with the court's analysis, which is as follows:
 {¶ 56} "In reading the policy, an insured would encounter Section C. `Exclusions' and discover that failure to obtain consent prior to settling a claim with an underinsured tortfeasor does not exclude
coverage under the policy. However, if the insured would continue to read the policy, he would also encounter Section E. `Changes in Conditions,' and ascertain his duties in the event of a loss. This section does not require the insured to obtain consent prior to settling the loss in order for coverage to be provided, but does impose a duty upon the insured to notify the insurance company prior to finalizing any settlement with a tortfeasor if the insured intends to seek underinsured motorist coverage. Stated differently, the insured does not need to await permission from CIC to settle, but does need to inform the insurance company that a tentative settlement has been reached to allow CIC to take whatever action it wishes to take. See McDonald v. Republic-FranklinIns. Co. (1989), 45 Ohio St.3d 27, 31-32, 543 N.E.2d 456 (explaining the options of the insurance company once notified of a tentative settlement with the tortfeasor).
 {¶ 57} "Moreover, the character of the `consent' provision and the `notice' provision is entirely different. If consent were required under the policy and not obtained, no coverage would exist under the policy. On the other hand, the notification provision establishes a duty for the insured. If the duty is breached, further inquiry is required to determine whether coverage should be precluded under the policy. Contrary to the estate's contentions, this policy specifies that the duty of notification is imposed upon the insured in order to protect CIC's subrogation rights against the tortfeasor. After all, prior to notifying the underinsured carrier, the insured is the only person who can preserve those rights for the insurance company. McDonald, supra, at 31. While we agree that CIC's policy could have been written more clearly, we do not find that the policy provisions are ambiguous." McClain (emphasis in the original). See, also, Gidley v. Cincinnati Ins. Co. (Apr. 17, 2002), Summit App. No. 20813.
 {¶ 58} In other words, the insured must notify Hartford of a tentative settlement and give Hartford 30 days to act on that notice so that Hartford is able to protect its subrogation rights. Should Hartford not act, then the insured may settle without Hartford's consent and remain eligible for UM/UIM coverage under the contract. See Fulmer v.Insura Prop. Cas. Co. (2002), 94 Ohio St.3d 85, paragraph one of the syllabus. The "notice" provision and the "consent" provision are separate and distinct. Regardless of whether the Straughans could finalize a settlement without Hartford's consent, they were under a contractual duty to give "prompt written notice" of a "tentative settlement." Breach of this duty that prejudices the insurer precludes coverage.
 {¶ 59} Contrary to the trial court's opinion, we find that it is not "difficult to discern when, or even if, written consent or notification is necessary in a situation such as the one presented herein." In the situation here, the insured was required to "promptly notify [Hartford] in writing of a tentative settlement." The Straughans did not so notify Hartford.[1] They are therefore in breach of their contract with Hartford.
 D. {¶ 60} A recent Supreme Court opinion, however, requires this court to remand the matter to the trial court to determine the effect of that breach. Ferrando v. Auto-Owners Mut. Ins. Co., 2002-Ohio-7217. Previously, Ohio law held that an insurer's breach of an insurance contract that destroyed the insurer's subrogation rights precluded the insured from collecting under the policy. Now, "[w]hen an insurer's denial of uninsured motorist coverage is premised on the insured's breach of a * * * subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights." Ferrando, paragraph two of the syllabus.
 {¶ 61} On remand, the trial court is to determine whether the breach, which did destroy Hartford's subrogation rights, prejudiced Hartford. In making this determination, the trial court must be mindful that the burden of showing that Hartford was not prejudiced falls on the Straughans, since their breach "is presumed prejudicial to the insurer absent evidence to the contrary." Ferrando, paragraph two of the syllabus.
 III. {¶ 62} Therefore, under our de novo review, we find that the "notice" and "consent" provisions of the UM/UIM portions of the policy are not ambiguous and are therefore enforceable. Further, we hold the Straughans's failure to notify Hartford of any tentative settlement constituted a breach of the policy. We remand for the determination of whether the Straughans' breach prejudiced Hartford. If the trial court determines that the breach did prejudice Hartford, then Hartford is "relieved of the obligation to provide coverage[.]"
Judgment reversed and remanded.
This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellants recover of said appellees their costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and ANN DYKE, J., CONCUR.
[1] {¶ a} The Straughans's argument that "prior notice of a settlement with the insurer of an underinsured motor vehicle is notnecessary and does not defeat a subsequent claim for underinsuredmotorist coverage" is not quite correct. (Emphasis sic.) Prior notice of "a settlement" may not be required — assuming that the settlement has been completed. The Straughans confuse the "notice" requirement with the "consent" requirement. The insured's notice of a "tentative" settlement is required; the insurer's consent to the actual settlement is not.
{¶ b} Further, the Straughans's argument that "[t]he notification requirements of the coverage section are only required if the underlying policy is not exhausted and there is a tentative settlement" is patently wrong. (Emphasis added.) The policy provides coverage if either the limits have been exhausted or if a tentative settlement has been reached (with notice, etc.). Part A., Section 2. The requirements are disjunctive and one may apply while the other does not.