RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0337p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GOODYEAR TIRE AND RUBBER COMPANY,
      *Plaintiff-Appellant*,

  *v.*

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA,

       *Defendant*,

FEDERAL INSURANCE COMPANY,
      *Defendant-Appellee.*

No. 11-4145

> Appeal from the United States District Court
> for the Northern District of Ohio at Akron.
> No. 5:08-cv-1789—Christopher A. Boyko, District Judge.

Argued: July 17, 2012

Decided and Filed: September 17, 2012

Before: SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mark J. Andreini, JONES DAY, Cleveland, Ohio, for Appellant. Daniel J. Standish, WILEY REIN LLP, Washington, D.C., for Appellee. **ON BRIEF:** Mark J. Andreini, JONES DAY, Cleveland, Ohio, for Appellant. Daniel J. Standish, Cara Tseng Duffield, M. Addison Draper, WILEY REIN LLP, Washington, D.C., for Appellee. Paul A. Rose, Lucas M. Blower, BROUSE McDOWELL, L.P.A., Akron, Ohio, Kevin Drummond Eiber, Caroline L. Marks, BROUSE McDOWELL, L.P.A., Cleveland, Ohio, for Amici Curiae.

_____

[*] The Honorable Stephen J. Murphy III, United States District Judge for the Eastern District of Michigan, sitting by designation.

—————————

**OPINION**

—————————

KETHLEDGE, Circuit Judge.   This is the latest in a series of recent cases in which one corporation asks us to disregard the plain terms of its insurance agreement with another corporation.   We deny the request here as we have elsewhere, and affirm.

Goodyear Tire and Rubber Company announced on October 22, 2003 that it would restate its earnings for some prior years.   The day after the announcement, shareholders filed class-action lawsuits against Goodyear and several of its officers and directors under the securities laws.   The SEC also commenced an investigation. Eventually, the lawsuits were dismissed and the investigation terminated.   Meanwhile, Goodyear incurred some $30 million of legal and accounting costs.

Goodyear sought recovery of those costs from two of its insurers:   National Union Fire Insurance Company and Federal Insurance Company.   National Union's policy with Goodyear had an aggregate liability limit of $15 million, with a $5 million retention to be paid by Goodyear.   Federal's policy had an aggregate liability limit of $10 million in excess of the National Union policy and retention.   Both insurers disputed, however, whether Goodyear's costs—particularly those relating to the SEC investigation—were reimbursable under their respective policies' terms.

Goodyear eventually filed this lawsuit against the two insurers.   After several years of litigation, Goodyear released its claim against National Union in exchange for a payment of $10 million.   But that settlement created a new problem for Goodyear's claim against Federal:   Goodyear's excess policy with Federal states that coverage attaches only after National Union pays out the full amount of its liability limit—which was $15 million rather than the $10 million that National Union paid.   Federal argued as much to the district court, which broomed the case in an order granting summary judgment to Federal.   We review the court's decision de novo.   *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 635 (6th Cir. 2010).

The parties agree that Ohio law governs here.  Under Ohio law, courts construe insurance agreements "in accordance with the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096, 1102 (Ohio 1992). That means courts will not "rewrit[e] the contract when the intent of the parties is evident, *i.e.*, if the language of the policy's provisions is clear and unambiguous[.]" *Id.*

The relevant provision of Federal's policy is undisputedly clear and unambiguous.  It provides: "Coverage hereunder shall attach *only after* [National Union] shall have paid in legal currency the full amount of the Underlying Limit [*i.e.*, National Union's policy limit of $15 million] for such Policy Period."  *Excess Policy* at 3 (emphasis added).

Even Goodyear admits that this provision is clear:  Federal pays nothing unless National Union first pays $15 million—"in legal currency[,]" no less.  Indeed Goodyear admits that the provision could not be *more* clear.  But Goodyear has persisted in this lawsuit nonetheless, arguing for reversal on two grounds.

The first is that we should enforce Ohio's "public policy favoring settlements," Goodyear Br. at 15, rather than the undisputed meaning of the parties' agreement.  In support, Goodyear cites two cases involving underinsured-motorist coverage. *See Bogan v. Progressive Casualty Ins. Co.*, 521 N.E.2d 447 (Ohio 1988); *Fulmer v. Insura Prop. & Casualty Co.*, 760 N.E.2d 392 (Ohio 2002). In both *Bogan* and *Fulmer*, the plaintiff was injured in a car accident, later settled with the other driver's insurer for less than policy limits, and then sought coverage from the plaintiff's own insurer per an underinsured-motorist provision.  In each case, the Ohio Supreme Court declined to enforce "strictly" an exhaustion provision that conditioned underinsured-motorist coverage on payment of the other driver's policy limits.  *Bogan*, 521 N.E.2d at 453; *Fulmer*, 760 N.E.2d at 400.  Goodyear suggests that we should take a similar approach here.

But this is hardly an underinsured-motorist case.   Underinsured-motorist coverage was mandated under Ohio law at the time of the accidents in *Bogan* and *Fulmer*, *see* Ohio R.C. § 3937.18(A)(2); and the court in *Bogan* held that the exhaustion

provision there was contrary to "the intent of the General Assembly as expressed in" the statute mandating such coverage, 521 N.E.2d at 453. We do not have any such conflict with legislative intent here, which is reason enough not to apply *Bogan* or *Fulmer*. Nor do we have any concern about "hasten[ing] the payment to the injured party who obviously needs compensation soon after the injuries when the medical expenses begin to amass and when the anxiety level is probably quite high[,]" *id.* at 451—which is still more reason not to apply those cases. What we have, instead, is an insurance agreement into which sophisticated parties freely entered. Per the general rule in Ohio—and not the niche rule laid out in *Bogan* and *Fulmer*—we will enforce that agreement according to its terms. *See Hybud Equip. Corp.*, 597 N.E.2d at 1102.

Goodyear's other argument is that we should disregard the exhaustion provision because Goodyear's "less-than-limits settlement in July 2010 did not prejudice Federal in any way." Goodyear Br. at 29. But this case does not concern a mere notice or cooperation requirement, which perhaps we could wave off absent any real harm to the insurer. Rather, the provision at issue here is where the rubber hits the road: the agreement's Insuring Clause, under whose terms Federal undisputedly did not agree to provide the coverage that Goodyear now seeks. Goodyear's arguments are meritless.

The district court's judgment is affirmed.