OPINION
On December 15, 2000, Jane Withem, now known as Jane Glass, filed a complaint in the Franklin County Court of Common Pleas against Cincinnati Insurance Co. ("Cincinnati"). Ms. Glass had been in an automobile collision on July 8, 1996 and suffered serious injury, including a near amputation of her right hand. On April 11, 1997, the tortfeasor's insurance carrier paid Ms. Glass $12,500, the limit of liability, in exchange for the release of the tortfeasor. In June 1997, Ms. Glass was paid $87,500 under the underinsured motorists ("UIM") provision of her father's policy in exchange for the release of any claims arising under such policy. In February 2000, Ms. Glass made a claim with Cincinnati for UIM benefits. Cincinnati had issued a commercial automobile liability policy to National Meter Parts, Inc. ("National Meter") which contained UIM coverage. Ms. Glass's mother had been employed by National Meter at the time of the collision.
Ms. Glass averred that she was an insured under her mother's employer's commercial automobile liability policy pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660 and Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999), 86 Ohio St.3d 557. The complaint averred that Ms. Glass had presented a claim to Cincinnati and that Cincinnati had failed to make an offer of settlement and/or acknowledge the legitimacy of her claim. Ms. Glass sought, among other things, compensation under the National Meter policy.
Cincinnati filed an answer, asserting as a defense that Ms. Glass had failed to comply with conditions precedent to coverage under the policy. The parties filed motions for summary judgment. On October 11, 2001, the trial court rendered a decision and entry granting summary judgment in favor of Cincinnati. The trial court found, in essence, that Ms. Glass's settlement with the tortfeasor destroyed Cincinnati's subrogation rights and, therefore, Cincinnati was not obligated to provide UIM coverage to Ms. Glass.
Ms. Glass (hereinafter "appellant") has appealed to this court, a ssigning a single error for our consideration:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN OVERRULING PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUSTAINING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT * * * ON THE GROUNDS THAT PLAINTIFF-APPELLANT'S PRIOR SETTLEMENT WITH THE TORTFEASOR DESTROYED THE PURPORTED SUBROGATION RIGHTS OF DEFENDANT-APPELLEE, THEREBY DISCHARGING DEFENDANT-APPELL[EE] FROM ANY OBLIGATION TO PROVIDE UNDERINSURED MOTORIST COVERAGE, BASED UPON THE REASONING OF THIS COURT IN Beverly Howard et al. vs. State Auto Mutual Insurance Company et al., (Unreported), Case No. 99AP-577, Tenth District Court of Appeals, Decided March 14, 2000.
Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Andersen v. Highland House Co. (2001), 93 Ohio St.3d 547,548. The material facts in the case at bar are not in dispute. Rather, the instant appeal involves only a question of law, namely, whether appellant's settlement with the tortfeasor discharged the obligation of Cincinnati (hereinafter "appellee") under the commercial automobile policy to provide UIM coverage to appellant.
We note that in light of Scott-Pontzer and Ezawa, appellee does not seriously dispute that appellant was an insured under the policy. Rather, appellee asserts that it was discharged from providing UIM coverage to appellant because appellant settled with the tortfeasor and thereby destroyed appellee's subrogation rights. Appellee contends that the case of Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, partially overruled on other grounds in Fulmer v. Insura Prop. Cas. Co. (2002), 94 Ohio St.3d 85, supports its argument. Bogan held:
 Based upon the established common law and further strengthened by the specific statutory provision, R.C. 3937.18, a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such a clause is therefore both a valid and enforceable precondition to the duty to provide underinsured motorist coverage.
Id. at paragraph four of the syllabus.[1]
In contrast, appellant asserts this court's decision in Howard v. State Auto Mut. Ins. Co. (2000), Franklin App. No. 99AP-577 is dispositive of the issues herein. Howard involved essentially the same fact pattern presented here. The insureds signed a release discharging the tortfeasor and her insurer from all liability in exchange for $98,000. They then sought UIM coverage under their policies. The trial court determined that the plaintiffs were precluded from recovering UIM benefits because they had failed to notify and obtain the consent of their insurance companies prior to settling with the tortfeasor and the tortfeasor's insurer. This court reversed on the basis that the policy language was ambiguous. Construing the language in favor of the insureds, we held that consent was not necessary and that the plaintiffs were not excluded from UIM coverage.
The policy language at issue in Howard was as follows:
 "A. We do not provide Uninsured/Underinsured Motorists Coverage for bodily injury sustained by any person:
* * *
 2. If that person or the legal representative settles the bodily injury claim without our consent. This exclusion * * * does not apply to a settlement made with the insurer of a[n underinsured] vehicle * * *.[2]
* * *
[Paragraph (C)(3)]
 A person seeking Uninsured/Underinsured Motorist Coverage must also:
* * *
 3. Promptly notify us in writing of a tentative settlement between the Insured and the insurer of a vehicle described in Section 2. of the definition of uninsured/underinsured motor vehicle and allow us 30 days to advance payment to that Insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such uninsured/underinsured motor vehicle."
We stated that the language in paragraphs (A)(2) and (C)(3), although the former dealt with consent and the latter dealt with notification, was contradictory and confusing. Therefore, we held that consent to settle was not necessary, and the plaintiffs were not precluded from recovering under the UIM provision.
The policy language at issue here is almost identical. The policy provisions in the case at bar state:
A. COVERAGE
 1. We will pay all sums the "insured" is legally entitled to recover * * * from the owner or driver of an "un[der]insured motor vehicle" * * *.
* * *
C. EXCLUSIONS
This insurance does not apply to:
 1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a[n underinsured] vehicle * * *.
* * *
E. CHANGES IN CONDITIONS
 The CONDITIONS of the policy for OHIO UNINSURED MOTORISTS INSURANCE are changed as follows:
* * *
 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
* * *
 c. A person seeking Un[der]insured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the [underinsured] vehicle * * * and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle * * *.
 3. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is amended by adding the following:
 If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.
 Our rights do not apply under this provision with respect to Un[der]insured Motorists Coverage if we:
 a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a[n underinsured] vehicle * * *, and
 b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
As in Howard, the provisions above indicate that consent prior to settlement is unnecessary when an underinsured vehicle is involved but that notice of a tentative settlement is required. Hence, we could find, consistent with Howard, that the provisions here are ambiguous, confusing and/or misleading and, therefore, appellant was not required to give notice of the impending settlement with the tortfeasor's insurer. However, very recently this court rendered a decision that is dispositive of the matter before us.
In Alatsis v. Nationwide Ins. Ent., Franklin App. No. 01AP-1038, 2002-Ohio-2906, this court dealt with a very similar fact pattern and addressed essentially the same issues that are raised herein. In Alatsis, the insured was injured in a 1995 automobile collision. Id. at ¶ 2. The insured settled with the tortfeasor and released the tortfeasor from any further liability. Id. Subsequently, the insured filed an action against her employer's insurance carrier under a commercial automobile liability policy, seeking a declaration as to the availability of UIM coverage thereunder. Id. at ¶ 3. The trial court found the insured was not entitled to coverage.
On appeal, Nationwide argued that the insured was not entitled to recover under the policy because she had failed to provide prompt notice to Nationwide and, instead, settled with the tortfeasor, thereby prejudicing Nationwide's subrogation rights. Id. at ¶ 12. The insured asserted that under Howard, she had no contractual obligation to notify Nationwide prior to settling. Id. at ¶ 12-13. However, this court held that the case before it was distinguishable from Howard as the policy at issue contained additional language addressing Nationwide's subrogation rights. Such language stated:
 "If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after `accident' or `loss' to impair them."
Id. at ¶ 14-15.
Citing Bogan at paragraph four of the syllabus and its progeny, we concluded that the insured, in releasing the tortfeasor from liability, had failed to secure Nationwide's rights as required in the subrogation clause, thereby materially prejudicing Nationwide's subrogation rights; therefore, Nationwide was under no obligation to provide coverage under the policy. Alatsis at ¶ 16-20, 25. Hence, any potentially confusing and/or ambiguous language regarding consent and notice did not inure to the insured's benefit as the subrogation clause independently obligated the insured to do everything necessary to secure Nationwide's rights, including not releasing the tortfeasor from liability.
The policy at issue here contains the exact same subrogation clause at issue in Alatsis. See policy at Section IV. A. 5.[3] Because the issues and policy provisions in the case at bar are virtually identical to the those in Alatsis, we feel compelled to follow this most recent precedent, at the very least for consistency purposes. This issue may very well be finally determined by the Supreme Court in the near future.[4] Until then, we follow this court's recent decision in Alatsis dealing specifically with the subrogation issue.
Hence, we find that summary judgment in favor of appellee was appropriate as appellant materially prejudiced appellee's subrogation rights by settling with the tortfeasor and releasing him from liability. Therefore, appellee was not obligated to provide UIM coverage to appellant under its commercial automobile liability policy. Accordingly, appellant's sole assignment of error is overruled.
Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
DESHLER and PETREE, JJ., concur.
[1] We note that while certain portions of Bogan have been overruled, modified and/or clarified in Fulmer and in McDonald v. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, paragraph four of the syllabus of Bogan was reaffirmed in McDonald at 29 and, indeed, remains good law.
[2] For certain reasons, the tortfeasor's automobile would not have been considered an underinsured vehicle. Thus, consent would have been necessary in Howard.
[3] We note that this clause is not the only provision in the policy that could arguably constitute a subrogation clause.
[4] Indeed, the Supreme Court recently allowed an appeal from a decision of the Eleventh District Court of Appeals which involves very similar issues. Ferrando v. Auto-Owners Mut. Ins. Co. (2002),94 Ohio St.3d 1451.