OPINION
{¶ 1} This matter is before the Court upon an application for further consideration which we granted, by way of judgment entry, on August 1, 2003. This court originally issued its opinion in this matter on April 29, 2003.[1] Thereafter, on May 9, 2003, Appellees Ricky Lee Sheaffer, et al. ("appellees") filed a motion for reconsideration. In their motion, appellees requested that we reconsider our opinion in order to address a portion of our decision which sustained Appellant Argonaut Great Central Insurance Company's ("Argonaut") Second Assignment of Error.
 {¶ 2} On June 17, 2003, we granted appellees' motion and filed a judgment entry in which we concluded Argonaut's umbrella policy is a motor vehicle liability policy and contains UM coverage in the limit amount of $1,000,000. We did not address Argonaut's Third, Fourth or Fifth Assignments of Error. Thereafter, on June 24, 2003, appellees filed an application for further consideration in which they now request the court to address the disposition of Argonaut's Second Assignment of Error and the merits of Argonaut's Third, Fourth and Fifth Assignments of Error.
 {¶ 3} We granted appellees' request and the following memorandum opinion and judgment entry addresses these assignments of error. Argonaut's Second, Third, Fourth and Fifth Assignments of Error are as follows:
 {¶ 4} "II. THE TRIAL COURT ERRED BY DETERMINING THE ARGONAUT UMBRELLA POLICY CONTAINS $1,000,000 OF UNDERINSURED MOTORISTS COVERAGE AS A MATTER OF LAW ACCORDING TO R.C. § 3937.18.
 {¶ 5} "III. THE TRIAL COURT ERRED BY DETERMINING THAT APPELLEES AND APPELLEES' DECEDENT WERE INSUREDS UNDER THE ARGONAUT POLICIES.
 {¶ 6} "IV. THE TRIAL COURT ERRED BY GRANTING APPELLEES $525,000 OF DAMAGES.
 {¶ 7} "V. THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING PREJUDGMENT INTEREST FROM NOVEMBER 14, 2001 RATHER THAN THE DATE OF THE SUMMARY JUDGMENT DECISION."
 II {¶ 8} In its Second Assignment of Error, Argonaut argues the trial court erred when it determined its umbrella policy contains $1,000,000 of UM coverage as a matter of law according to R.C. 3937.18. In our judgment entry addressing appellees' first motion for reconsideration, we found Argonaut's umbrella policy to be a motor vehicle liability policy containing UM coverage in the limit amount of $1,000,000. However, in doing so, we failed to formally overrule Argonaut's Second Assignment of Error.
 {¶ 9} Accordingly, based upon our decision in the Judgment Entry filed on June 17, 2003, we hereby vacate our decision as it pertains to the Second Assignment of Error in the memorandum opinion and judgment entry filed on April 29, 2003. We re-affirm our judgment entry filed on June 17, 2003, and overrule Argonaut's Second Assignment of Error.
 III {¶ 10} In its Third Assignment of Error, Argonaut contends that even if UM/UIM coverage arises by operation of law, it does not arise in favor of appellees because they are not "insureds" under the policies Argonaut issued to the decedent's employer, Rhode's Market, Inc. We disagree.
 {¶ 11} Argonaut's arguments, as to this assignment of error, focus on the language contained in its CGL policy. However, we previously determined, in Argonaut's First Assignment of Error, that Argonaut's CGL policy is not a motor vehicle policy subject to the mandates of R.C.3937.18. Therefore, our analysis will focus on Westfield's commercial auto policy and whether appellees are "insureds" under the commercial auto policy such that they qualify as "insureds" under Argonaut's umbrella policy. As noted in Argonaut's Second Assignment of Error, we previously determined Argonaut's umbrella policy is a motor vehicle liability policy and therefore, UM coverage exists in the limit amount of $1,000,000.
 {¶ 12} Having determined UM coverage exists under Argonaut's umbrella policy, we must now determine whether appellees are entitled to UM coverage as "insureds" under said policy. The language contained in Argonaut's umbrella policy that is pertinent to our determination of this issue is found in Section IV of Argonaut's umbrella policy. The pertinent language is as follows:
 {¶ 13} "Section IV — WHO IS AN INSURED
 "* * * {¶ 14} "d. With respect to the `auto hazard,' each of the following is an insured:
 {¶ 15} "(1) any person or organization qualifying as an insured as respects `auto' liability in the `underlying insurance,' other than those persons or organizations added as additional insureds by endorsement; and * * *
 "* * *" {¶ 16} We previously determined, based upon the definition of "underlying insurance" contained in Argonaut's umbrella policy, that Westfield's auto policy is an underlying policy. Therefore, in order for the decedent and her estate to be entitled to coverage under Argonaut's umbrella policy, we must find they qualify as "insureds" under Westfield's auto policy. Westfield's auto policy defines "insured" as follows:
 {¶ 17} "B. Who Is An Insured
 {¶ 18} "1. You.
 {¶ 19} "2. If you are an individual, any `family member.'
 {¶ 20} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 21} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.' "
 {¶ 22} This is the identical language the Ohio Supreme Court relied upon when it determined, in Scott-Pontzer v. Liberty Mut. FireIns. Co., 85 Ohio St.3d 660, 1999-Ohio-292 and Ezawa v. Yasuda Fire andMarine Ins. Co., 86 Ohio St.3d 557, 1999-Ohio-124, that employees and their family members are "insureds" and entitled to insurance proceeds under policies of insurance issued to their employers.
 {¶ 23} Accordingly, we determine appellees are "insureds" and entitled to coverage under Argonaut's umbrella policy because they qualify as "insureds" under Westfield's commercial auto policy, which is an underlying policy of Argonaut's umbrella policy.
 {¶ 24} Argonaut's Third Assignment of Error is overruled.
 IV {¶ 25} Argonaut contends, in its Fourth Assignment of Error, that appellees are only entitled to recover $242,500 under the umbrella policy. We disagree.
 {¶ 26} Argonaut bases its argument on the stipulations entered into by the parties on May 10, 2002. Paragraphs fourteen and fifteen provide as follows:
 {¶ 27} "14. Plaintiffs and Westfield had a genuine dispute as to whether the Westfield Policy provided uninsured motorists coverage for Plaintiffs' claims arising out of the Accident, and, if so, the applicable policy limits of such coverage. Irrespective, Plaintiffs' claims against Westfield were settled for a structured settlement with an estimated present value of $717,500, which exhausted any uninsured motorist coverage provided to Plaintiffs by the Westfield Policy.
 {¶ 28} "15. Decedent, Judy Kay Sheaffer, and Decedent's surviving spouse, Ricky Lee Sheaffer, and eight minor children, Elam R. Sheaffer, Gary L. Sheaffer, Shawn L. Sheaffer, Ella M. Sheaffer, Juanita D. Sheaffer, Daniel E. Sheaffer, Joanna J. Sheaffer, and Amos J. Sheaffer, suffered damages as a result of Decedent's wrongful death, which damages, after partial payment thereof through the settlement with Westfield, amount to an additional $525,000." Stipulations, May 10, 2002, at 3.
 {¶ 29} Argonaut argues that based upon the above stipulations, it only owes appellees $242,500, which is the amount of total damages, $1,242,500, less Westfield's policy limit of $1,000,000. Argonaut calculates the total damages by adding the $717,500 Westfield paid to appellees and the stipulated additional damage amount of $525,000. Argonaut also refers to Item 6 of the Declarations and argues that it is only required to pay damages in excess of the policy's retained limit, which is $1,000,000. In support of its argument, Argonaut cites the Ohio Supreme Court's decision in Fulmer v. Insura Prop. Cas. Co.,94 Ohio St.3d 85, 2002-Ohio-64.
 {¶ 30} In the Fulmer decision, the Court held at paragraph two of the syllabus:
 {¶ 31} "An insured satisfies the exhaustion requirement in the underinsured motorist provision of her insurance policy when she receives from the underinsured tortfeasor's insurance carrier a commitment to pay any amount in settlement with the injured party retaining the right to proceed against her underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's available policy limits. * * *" (Emphasis sic.)
 {¶ 32} In response, appellees maintain the parties did not agree that they suffered total damages in the amount of $1,242,500 or that Westfield's policy contained UM coverage with limits of $1,000,000. Instead, appellees contend the stipulations are clear that the parties did not agree to the total amount of damages suffered by appellees and disputed whether the policy provided UM coverage and the amount of said coverage. Further, the parties agreed, in paragraph fourteen, that Westfield's payment of $717,500 exhausted its policy limits.
 {¶ 33} Appellees also disagree with Argonaut's argument that it is only obligated to pay damages in excess of its policy's retained limit of $1,000,000. First, appellees maintain this provision only applies to the policy's liability coverage and not its UM coverage. Second, appellees contend the retained limit is not $1,000,000, but rather $10,000. Appellees argue Argonaut incorrectly refers to a section which lists a variety of limits for coverages expressly provided by Argonaut's CGL policy.
 {¶ 34} We agree with appellees' conclusion that Argonaut owes appellees $525,000 under its umbrella policy. Argonaut's umbrella policy drops down once the underlying insurance is exhausted. The parties stipulated that Westfield's policy was exhausted by its payment of $717,500 to appellees. Therefore, appellees are entitled to coverage under Argonaut's umbrella policy for the stipulated damage amount of $525,000.
 {¶ 35} Argonaut's Fourth Assignment of Error is overruled.
 V {¶ 36} In its Fifth Assignment of Error, Argonaut contends the trial court erred when it awarded prejudgment interest from the date Argonaut denied coverage. We disagree.
 {¶ 37} Argonaut makes two arguments under this assignment of error. First, Argonaut maintains the stipulated amount of damages included prejudgment interest. Second, Argonaut argues the trial court should have awarded prejudgment interest from the date of the trial court's summary judgment decision because of the complexity and uncertainty of Scott-Pontzer cases.
 {¶ 38} An appellate court's review of a trial court's award of prejudgment interest is governed by an abuse of discretion standard.Landis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339, 1998-Ohio-387. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 39} The Ohio Supreme Court addressed the issue of prejudgment interest in Landis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339,1998-Ohio-387. Landis involved a claim for underinsured motorists coverage. Id. at 339. Plaintiffs' claim was submitted to arbitration and plaintiffs received an award of $1,300,000. Id. Thereafter, plaintiffs sought recovery of prejudgment interest. On appeal to the Ohio Supreme Court, the Court first determined that plaintiffs were entitled to recover prejudgment interest under R.C. 1343.03(A). Id. at 341. In determining the date from which prejudgment interest should be calculated, the Court held:
 {¶ 40} "Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine. Upon reaching that determination, the court should calculate, pursuant to R.C. 1343.03(A), the amount of prejudgment interest due Landis and enter an appropriate order." Id. at 342.
 {¶ 41} In its judgment entry, the trial court concluded as follows concerning the commencement of prejudgment interest:
 {¶ 42} "* * * Utilizing the totality of the circumstances analysis to determine the date from which prejudgment interest accrues, this Court finds that it is fair and just to assess prejudgment interest from November 14, 2001, which was the date on which Argonaut denied coverage. This is a conservative estimate given that the Court could assess interest from the date of the fatal accident herein (June 2, 2000). This is based upon this Court's opinion that Argonaut erroneously denied coverage on November 14, 2001, when, per Landis, benefits `should have been paid." Judgment Entry, Aug. 15, 2002, at 4-5.
 {¶ 43} We decline to accept Argonaut's argument that the stipulated amount of damages included prejudgment interest because the stipulations do not indicate that the total amount of damages included prejudgment interest. Second, we find it would be inappropriate for the trial court to award prejudgment interest from the date of the trial court's summary judgment decision because an award from that date would be postjudgment interest.
 {¶ 44} Finally, based upon the Landis decision, we conclude the trial court did not abuse its discretion when it awarded prejudgment interest from the date Argonaut denied coverage as the Ohio Supreme Court has determined that the date of denial of coverage may be an appropriate trigger date for the commencement of prejudgment interest.
 {¶ 45}
Argonaut's Fifth Assignment of Error is overruled.
 {¶ 46} For the foregoing reasons, the judgment of the Court of Common Pleas, Holmes County, Ohio, is hereby affirmed in part, reversed in part[2] and remanded for further proceedings consistent with this opinion.
By: Wise, J., Farmer, P.J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Holmes County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
[1] In an opinion and Judgment Entry filed on April 29, 2003, we sustained Argonaut's First Assignment of Error and concluded its CGL policy is not a motor vehicle liability policy and therefore, was not required to offer UM/UIM coverage to the decedent's employer. SeeSheaffer v. Argonaut Great Cent. Ins. Co., Holmes App. No. 02 CA 14,2003-Ohio-2409.
[2] The reversal pertains to our disposition of Westfield's First Assignment of Error in the memorandum opinion and judgment entry filed on April 29, 2003.