NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0582n.06

No. 21-3349

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CANTON DROP FORGE, INC.,

    Plaintiff-Appellant,

v.

TRAVELERS CASUALTY & SURETY
COMPANY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Dec 14, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

Before: McKEAGUE, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Over several decades, oil gathered in man-made ponds that Canton Drop Forge used to treat its wastewater. The Ohio and United States Environmental Protection Agencies ordered Canton to close the ponds—a costly, years-long remediation process for which Canton sought insurance coverage from Travelers only after Canton finished most of the cleanup. Travelers refused coverage because Canton had failed to notify Travelers of the claim "as soon as practicable." Canton brought this suit and the district court granted summary judgment in favor of Travelers. We affirm.

I.

Canton Drop Forge makes metal parts for the energy, aerospace, and transportation industries. To make these parts, Canton heats metal, places it between two dies (steel blocks with

cutouts of the part's intended shape), hammers the dies together, and cools and finishes each part. Canton lubricates the dies with oil, and this oil ends up in the forge's "process wastewater."

Since the 1940s, Canton has used a series of man-made ponds at its Ohio facility to separate and dispose of oil in the wastewater. The wastewater flowed from the forge into the ponds, where Canton would skim oil off the top and dispose of it. Over time, oil accumulated in the ponds and surrounding soils.

In August 2012, a federal EPA inspector told Canton that it would need to close the ponds. Canton then tried to enter Ohio's Voluntary Action Program, through which it would clean up the ponds without federal enforcement. In January 2013, however, the federal EPA formally notified Canton that its ponds violated state and federal regulations in two ways: the ponds were surface impoundments of hazardous waste that needed and lacked a permit; and Canton had failed to determine whether the used oil on the bottom and sides of the ponds constituted hazardous waste.

For 18 months, Canton negotiated with the federal and Ohio EPAs. These negotiations ended in September 2014, when Canton agreed to pay a civil penalty and to close the ponds. Canton then removed the contaminated water and soil from the ponds and replaced them with clean sand, clay, and gravel. The Ohio EPA concluded that Canton had successfully closed the ponds in August 2016.

In November 2016, Canton sent a letter to Travelers Casualty & Surety Company to request insurance coverage for the pond closure costs. Travelers denied that request in September 2017 because, among other reasons, Canton had failed to provide timely notice of its claims. Canton then sued Travelers in federal court, seeking reimbursement for its cleanup costs under both the primary and umbrella policies for "an amount exceeding $5,000,000." The district court granted

summary judgment to Travelers on several grounds in a thoroughly reasoned opinion. This appeal followed.

II.

We review the district court's grant of summary judgment de novo. *Goodyear Tire & Rubber Co. v. Nat'l Union Fire Ins. Co.*, 694 F.3d 781, 782 (6th Cir. 2012).

The terms of the primary insurance policy required Canton to give notice of an occurrence affecting coverage "as soon as practicable." The umbrella policy insured liabilities exceeding $1 million and likewise required notice of an occurrence "reasonably likely to involve" coverage "as soon as practicable."

The parties agree that Ohio law governs. Under Ohio law, an insurer may deny coverage based on the breach of a timely notice provision when the insurer "is prejudiced by the insured's unreasonable delay." *Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 945 (Ohio 2002). An unreasonable delay in notice "gives rise to a presumption of prejudice to the insurer," which the insured may thereafter rebut. *Id.* at 947. Late notice can prejudice an insurer if they lose options to protect their interests, "leaving them to deal with decisions made by the insured." *Ormet Primary Aluminum Corp. v. Emps. Ins. of Wausau*, 725 N.E.2d 646, 655-56 (Ohio 2000).

Canton failed to give timely notice here. In August 2012, a federal EPA inspector told Canton the ponds would need to be closed. In 2014, the federal and state agencies ordered Canton to close the ponds and to clean them up. Yet Canton did nothing to notify Travelers, its putative insurer for this liability, until November 2016—after Canton had already negotiated its liability with the agencies and spent more than $5 million on the cleanup. Nor does Canton have evidence creating a genuine issue as to whether it had reason not to be aware of its insurance coverage with

Travelers. This delay was unreasonable as a matter of law. *Cf. Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 843 (Ohio 2002).

Prejudice is just as plain here. Canton's delay prevented Travelers from having any involvement in negotiating the liability for which it later handed Travelers the bill. The same is true as to the cost of the cleanup. Canton's arguments that Travelers would have done nothing to reduce liability or cleanup costs are speculative and fail to show a lack of prejudice. *See Ormet*, 725 N.E.2d at 656.

The same reasoning applies to the umbrella policies at issue. Those policies provided coverage for claims exceeding $1 million and required timely notice of claims. Canton did not provide Travelers with notice of the claim until Canton had spent $5 million. Presumably Canton was aware that it was spending these amounts, and thus had no excuse for its failure to notify Travelers sooner. Canton's arguments are meritless.

The district court's judgment is affirmed.